BAKER, Judge,
with whom ERDMANN, Judge, joins (concurring in the result):
The Court’s opinion concludes that Appellant has not met his burden of demonstrating plain error. I agree, albeit for a different reason. As a separate matter, I believe this Court should, in light of this case, offer further guidance to the field distinguishing between proper and improper hypothetical and commitment questions during voir dire, although for reasons stated below this is admittedly difficult to do.
The Court discusses two tracks in state ease law on the subject of hypothetical questions during voir dire. The first track prohibits hypothetical questions intended to induce juror commitments on facts that are *152 verdict dispositive. The second track addresses questions intended to induce juror commitments on specific facts.
It is not clear how different the two tracks really are. One problem in this case is that under either track the questions asked by trial counsel would appear to be impermissible efforts to preview the members’ reaction to evidence yet to come. Trial counsel asked prospective members whether a technical error in the collection process would per se invalidate a urinalysis. This is a general question intended to discern potential bias and fixed and inflexible views regarding urinalysis processing generally. However, with some members trial counsel went further. In the case of Chief Warrant Officer 2 (CW02) C, for example, he asked:
And so it wouldn’t necessarily be per se invalid if the coordinator didn’t put his initials on the bottle let’s say. If it came back to the coordinator the accused brought it back to the table, but the coordinator didn’t put his initials on the bottle before it went back into the box. Would that be a violation that you couldn’t overlook?
Whether viewed as hypothetical, commitment, or case specific in nature, trial counsel’s questions about urinalysis processing accomplished the same objective, because Appellant’s case hinged on any doubts he might generate regarding the urinalysis procedures, and in particular with regard to the labeling of the bottle.[1] Thus, on this point, I think Appellant has the better argument. However, such insight comes from reading the record backward, a benefit the military judge did not have at the time.
I would not find plain error in this case because at the time the questions were asked, the military judge did not have the benefit of knowing how the evidence yet to be introduced would relate to the theories of the parties. Therefore, while it may be obvious in retrospect to see how the questions involved were more than hypothetical and did more than test for bias, I do not find error in the military judge not seeing this at the time the questions were asked. Where the questions concerned might reasonably have been intended to test for bias as well as potentially to test the real facts in issue on the potential members, the military judge did not have a sua sponte duty to look behind the questions asked.
In the voir dire context, it is the counsel who will have the better feel for the coming evidence rather than the military judge. Therefore, it is generally counsel’s objection and not the military judge’s speculation that is critical in detecting the improper question. Counsel, rather than the military judge, will have a better feel during voir dire as to whether hypothetical questions are truly hypothetical and intended to test for bias, or whether they are in reality (and in disguise) commitment questions intended to preview attitudes toward specific evidence. While not all commitment questions are improper, some questions surely are. Therefore, appellate courts might express concern but it is problematic to draw bright line rules. The same is true of hypotheticals. Hypotheticals are surely useful in testing for and detecting bias. However, they can also be used to preview ease specific facts and to warm up the jury.
For these reasons, military judges must have broad discretion in overseeing voir dire questioning. This discretion, however, should extend to looking behind the questions asked, especially where questions suggest an effort at securing commitments to case related “hypothetical” facts. Thus, in *153 instances where a military judge can reasonably foresee the direction of the case, hypothetical factual questions like those presented in this case might indeed present obvious attempts to commit the members. In such cases, a military judge would err in not testjng the basis for such questions,

. Trial counsel’s “military character” question put to all the potential members was also problematic:
Does any member believe that evidence [of] the accused[’s] good military character by itself is sufficient to out weigh [sic] other evidence of the accused's guilt?
Negative response from the members.
This question asked the members to commit to an incorrect statement of the law pertaining to the reasonable doubt standard, which was arguably plain and obvious at the time. However, the military judge later instructed the members that evidence of good military character and character for truthfulness could be enough to create reasonable doubt — and we assume that the members followed the military judge’s instructions. Therefore, if there was error in not immediately addressing the question posed, it was not prejudicial.